### KING *vs*. DILLON.

66  131
e122  779

1. An order making the return of partitioners the judgment of the court cannot be attacked collaterally and excluded on the ground that the proceedings to obtain partition were not all properly recorded, or that the evidenee showed that only one partitioner went upon the land.
2. The verdict in this case is contrary to law and the evidence.
3. Where an undivided interest in land was sold at sheriff's sale, subject to the homestead right of the defendant in *fi. fa.*, the homestead could not be set apart until after partition was made and then the homestead could be laid off out of the part allotted to the purchaser.
4. A contract being signed only by counsel for one side, the counsel for the other party being dead, we hardly think that it was competent to show, by the counsel who signed, the assent of deceased counsel and his adoption of the contract, and to admit the paper in evidence.
5. Where the undivided interest of a tenant in common was sold under a *fi. fa.* against him, subject to his right of homestead, he could not agree with the purchaser to include in his homestead the improvements on the place to the exclusion of his co-tenants, before partition.

Evidence. Verdict. Homestead. Partition. Contracts. Judgment. Presumption. Before Judge MERSHON. Glynn Superior Court. May Term, 1880.

The following, in connection with the decision, sufficiently reports this case:

Dillon brought ejectment against King for two parcels of land located on St. Simon's Island. The declaration

was based on three distinct demises, all of date November 3d, 1874, the first from Lamb, sheriff of Glynn county, the second from Mallory P. King, the third from D. J. Dillon. The land was described as situate in the 25th district G. M., of said county, on the south end of the island of St. Simon's, and known and described as eight forty-ninths undivided interest in the Retreat plantation, said eight forty-ninths undivided interest being afterwards, at the November adjourned term of the superior court of said county, 1875, fully ascertained by a proceeding for partition, which had been regularly commenced, and said land partitioned by James Postell, Asa Burney and Thomas W. Smith, who had been at a previous term of said court appointed to enter upon and partition said land, the same being held in tenancy in common by said D. J. Dillon, Mallory P. King as trustee for his wife and children, and Mrs. Virginia L. Nisbet, which partitioners made their return to said superior court, giving said D. J. Dillon forty-eight and one-half acres of said Retreat plantation, bounded south by Couper's Point, east by land granted to Piles, west by St. Simon's Sound and the light-house tract, and north by the remaining portion of said plantation; and, also, sixty-three acres on the extreme north of said Retreat plantation, bounded on the north by the original line of survey of said plantation, and on the south by the remaining portion of said plantation, divided therefrom by the line of survey as made by James Postell, under the proceedings for partition, etc., and said partition made the judgment of the court at said adjourned term.

The defendant pleaded not guilty.

The plaintiff introduced a deed from Lamb, sheriff, executed on November 3d, 1874, reciting that on October 1st, 1874, he levied upon a certain interest in lands thereinafter described, and after advertising the same for thirty days, etc., did sell the same at public outcry to the highest bidder, "as the property of Mallory P. King, sub-

ject to an exemption of sixty-five acres applied for in ordinary's court of said county, should said application be sustained," and D. J. Dillon being the highest bidder, he conveyed to him eight forty-ninths undivided interest in the Retreat plantation, situated on the south end of St. Simon's Island aforesaid.

Also, an execution in favor of D. J. Dillon & Sons against said King, for $128.00, principal, with interest, issued from Glynn superior court on December 2nd, 1872, with a levy thereon of date October 1st, 1874, on "forty-ninths undivided interest in Retreat plantation on St. Simon's Island."

Also, Lamb, who testified to the following facts:

On October 1st., and December 2nd., 1872, defendant King was in possession of Retreat plantation. Was one of the partitioners appointed by the court to partition Retreat plantation. Did not go on the land. Postell, Burney and witness were appointed partitioners. We were to visit land on sheriff's sale day, and witness could not go. Told Postell and Burney to go ahead with the division. Postell was a surveyor, and I would agree on what he did. Postell and Burney surveyed the land and we met at Goodyear & Harris' office, or the next room thereto. There we had a map of the property and we divided it. On the day of sale defendant interposed a pony homestead, and witness sold the property subject thereto.

The following paper was then handed to the witness:

"We agree not to contest the exemption of sixty-five acres of planttion on St. Simon's Island, known as Retreat, by Mallory P. King, which sixty-five acres shall include the dwelling and other buildings on said plantation, provided the application of D. J. Dillon for partition is not contested, said Dillon having purchased at sheriff's sale the undivided interest that said M. P. King may have in said plantation over and above said exemption.

GOODYEAR & HARRIS,
*Attorneys for D. James Dillon.*"

Had that paper before us at time of partition. Thinks property was partitioned on basis provided in that agreement. That is my recollection of it. Mr. Postell had a map here showing the land; so we took and divided off the tract by it. It has been a long time ago, and I did not think I would ever hear any more of it. I thought the whole thing was settled. We did have the paper before us at that time. The land was sold subject to the pony homestead of sixty-five acres. We had it divided off to tell where Captain King would get his sixty-five acres.

Plat and decree of partition of plaintiff introduced over objection.

Goodyear sworn for plaintiff: There was an application for partition by Dillon, witness prepared it. It was never recorded; it is not customary in this county to record petition and proceedings for partition, until it is finally concluded. Witness here states contents of application for partition, in which no reference whatever is made to homestead interest of King. States that five partitioners were appointed, but does not name them.

Agreement above copied tendered in evidence, and objected to by defendant, when Goodyear testified as follows: This paper is in the handwriting of DeBruhl, who was then attorney for King. Witness appended the signature of Goodyear & Harris. It was accepted by De Bruhl and went into his possession. Never saw paper again until it was produced by attorneys of defendant on last trial of this case. It was acted upon.

Court admitted paper for whatever it would illustrate in case.

Burney, for the defendant, testified that he went to St. Simon's Island at the appointed time to make partition, but found no one there. Had only been on south end of Retreat plantation. In making partition thereafter witness did not act on his own knowledge of the plantation, but that of Postell, the surveyor. In assigning Dillon's in-

terest cannot say that any deduction was made on account of homestead interest of defendant. Does not recollect having agreement above set forth before us.

Postell, for plaintiff, testified to following facts: In plantation there are 679 acres, eight-forty-ninths thereof would be one hundred and ten forty-four-forty-ninth acres. After we had made first division of property, agreement was brought in and it necessitated our making another, because in first division we had left out ten acres around the house. Afterwards we got this paper, and consulted with the other commissioners whether we had anything to do with it. It was brought in either by Goodyear or De Bruhl. We divided the land as we did because it was composed of scrub pine and hammock. Gave Dillon a piece of hammock and also a piece of scrub pine. Did not value dwelling-house. Did not take off sixty-five acres around the dwelling-house, only took off twenty acres. This was left out of the division altogether, because we were told that the house and lands around the house were not in the division. Understood Mr. King to say so. In assigning share to Dillon, we did not deduct sixty-five acres; we simply left out the land around the house. The dwelling-house and twenty acres around it were worth about $1,200.00. It was witness' understanding that Mr. King elected to take only twenty acres around the house. Partition was made in utmost good faith; was party to no fraud. The house and the twenty acres were omitted from division because it was supposed the family wanted it. It was not cut off for Mr. King nor for Dillon, nor for King as trustee for his wife; it was cut off for the whole family. It is true that no number of acres were specified as to be left out around the house, but just the premises; these premises turned out to include about twenty acres.

Defendant then introduced proceedings setting apart pony homestead.

The jury found for the plaintiff, and the defendant moved

for a new trial, upon numerous grounds, which was refused, and he excepted.

JAS. U. VINCENT; W. J. WILLIAMS, by JACKSON & LUMPKIN, for plaintiff in error.

GOODYEAR, HARRIS & KAY, for defendant.

JACKSON, Chief Justice.

Dillon sued King for a parcel of land on St. Simon's Island, in 1879. The title of Dillon rested on a sheriff's deed to the eight-forty-ninth part of a plantation known as the Retreat, subject to a homestead on the same for which application was pending before the ordinary, should that application be granted. The land was sold by the sheriff as King's, and the deed executed in 1874. In 1875, partition was made of this plantation between Dillon, King *as trustee for his wife and children*, and Mrs. Nisbet, King, as trustee, and Mrs. Nisbet, being tenants in common with Dillon after his purchase at sheriff's sale of the individual interest of King. In 1876 the homestead was granted King, and it was laid off and set apart to him under §2040 *et seq.* of the Code, commonly known as the pony homestead:

The following paper, without date, was introduced in evidence.

"We agree not to contest the exemption of sixty-five acres of plantation on St. Simon's Island, known as Retreat, by Mallory P. King, which sixty-five acres shall include the dwelling and other buildings on said plantation, provided the application of D. J. Dillon for partition is not contested, said Dillon having purchased at sheriff's sale the undivided interest that said M. P. King may have in said plantation over and above said exemption.
[Signed.]                    GOODYEAR & HARRIS,
                    *Attorneys for D. James Dillon.*"

The suit was brought to recover the entire partition ncluding the exemption therein set apart to King as

homestead, and under the charge of the court the jury found the entire premises for plaintiff, and defendant excepted to the judgment of the court refusing to grant him a new trial on the many grounds set out in the motion. In the view we take of the case, it is unnecessary to consider *seriatim* all these grounds.

1. So far as objections to the record evidence of the partition on the grounds that the petition and appointment of commissioners, etc., were not of record, we do not see that the court erred in admitting the judgment of the court which made the return of the commissioners its judgment. The presumption is that the prior proceedings were all right, and the judgment could not be attacked collaterally. The same may be said in regard to the part setting up that but one of the commissioners really went on the land and acted in dividing it.

2, 3, 4, 5. We think, however, that the verdict is wrong, and should be set aside in any legal view of the facts, and that the court gave such instructions as necessitated the erroneous finding of the jury.

The plaintiff's title may be conceded to be—as it appears to be—perfect as against the defendant ; but it only covers what he bought from the sheriff. What is that? The undivided ·interest of the defendant in execution, and the defendant to this action, in the Retreat plantation, after defendant's homestead under §2040 of the Code is carved out of it. The turning point in the case is this exemption. The sheriff sold and in express terms conveyed to the plaintiff subject to that exemption, and the purchaser bought King's individual interest, less King's homestead or exemption—then applied for— whenever granted, if it should be granted. It was afterwards granted ; and after this partition had set apart King's undivided interest to Dillon, King had set apart to him out of it sixty-five acres. Until Dillon's undivided interest was divided and separated from that of the other co-tenants, King could not practically carve

out of it his exemption. It was impossible for him to have laid off to him a portion of land out of another portion until the latter was ascertained and itself laid off. Besides, King had no right to this exemption out of his sister's, Mrs. Nisbet's, land, nor out of that which belonged to his own wife and children. If he did not get it out of Dillon's, he could not get it at all. Yet the court instructed the jury that he was entitled to the premises in dispute, which was the entire land partitioned to him, including King's sixty-five acres therein, and the jury so found.

The counsel for defendant in error, with his usual ability and energy, sought to justify the verdict on the strength of the agreement above set out. That instrument is without date, it is signed only by counsel for the plaintiff, and the counsel on the other side being dead, it is sought to show by the living counsel that the deceased counsel was bound by it and bound his client to it, though it was signed by neither client or counsel. We hardly think that this should have been allowed and the paper admitted.

But if properly admitted and binding upon the defendant, what is its effect? Simply to show that the partition should have been made in equity and not at law. How could the dwelling-house and other buildings be exempted to defendant unless set apart on partition to plaintiff first? And what right had the defendant to the entire buildings, to the exclusion of his sister and his wife and children, his co-tenants? And how could he bargain away their joint interest in the family home and buildings, and by any agreement with one who had bought his interest, convey theirs, or receive from his grantee, or the sheriff's grantee to his estate, the interest of others, which that grantee had no right to convey? Neither as trustee for his wife and children, nor as agent for his sister, could he so legally contract, even if he had signed the agreement, and signed it as agent and trustee, unless his

power was shown; much less could *his* attorney so bargain away the rights of others, who had in no conceivable way employed him or recognized him as their counsel, even had the attorney signed the so-called agreement.

Clearly, therefore, the court was wrong in all the instructions to the jury bearing on the question above discussed, the verdict is against law in these particulars, and not supported by the evidence, and the court erred in not setting it aside and granting a new trial.

Judgment reversed.